IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) IZA INVESTMENTS, LLC,<br><br>   *Plaintiff,*<br><br>v.<br><br>(1) FIDELITY AND GUARANTY<br>    INSURANCE COMPANY,<br><br>  and<br><br>(2) ST. PAUL FIRE AND MARINE<br>    INSURANCE COMPANY,<br><br>   *Defendants.* | )<br>)<br>)<br>)<br>)<br>) Cause No.: CIV-24-937-JD<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW PLAINTIFF, IZA INVESTMENTS, LLC, files this its Original Complaint and Jury Demand against Defendants FIDELITY AND GUARANTY INSURANCE COMPANY and ST. PAUL FIRE AND MARINE INSURANCE COMPANY, and for causes of action would respectfully show unto the Court and jury as follows:

### I.   PARTIES

1. Plaintiff, IZA INVESTMENTS, LLC ("IZA" or "Plaintiff"), owns the properties made the basis of this suit located at: 1110 NW 10th Street, Oklahoma City, Oklahoma 73106 and 5831-5841 NW 10th Street, Oklahoma City, Oklahoma 73127 (hereinafter collectively referred to as the "Property").

2.     Based on information and belief, Defendant, FIDELITY AND GUARANTY INSURANCE COMPANY ("Fidelity") is a corporation under the laws of the State of Iowa and is an insurance company registered to engage in the business of insurance in the State of Oklahoma. Fidelity can be served with process by serving Oklahoma Insurance Commissioner, Glen Mulready, located at Oklahoma Insurance Department, Attention: Legal Division, 400 NE 50th Street, Oklahoma City, Oklahoma 73105.

3.     Based on information and belief, Defendant, ST. PAUL FIRE AND MARINE INSURANCE COMPANY ("St. Paul") is a corporation under the laws of the State of Connecticut and is an insurance company registered to engage in the business of insurance in the State of Oklahoma. St. Paul can be served with process by serving Oklahoma Insurance Commissioner, Glen Mulready, located at Oklahoma Insurance Department, Attention: Legal Division, 400 NE 50th Street, Oklahoma City, Oklahoma 73105.

## II.     JURISDICTION AND VENUE

4.     This Honorable Court has personal jurisdiction over Defendants because at all times relevant hereto they provided insurance coverage in the State of Oklahoma and Plaintiff's causes of action arise out of its in-state business activities.

5.     At the time this lawsuit was filed and to this day, Plaintiff's members reside in Oklahoma County, Oklahoma. Plaintiff is therefore a citizen of Oklahoma for diversity jurisdiction purposes.

6.     To the best of Plaintiff's knowledge and belief, Fidelity is a foreign insurance company registered to do business in the State of Iowa. Fidelity is therefore a citizen of Iowa for diversity jurisdiction purposes.

7. To the best of Plaintiff's knowledge and belief, St. Paul is a foreign insurance company registered to do business in the State of Connecticut. St. Paul is therefore a citizen of Connecticut for diversity jurisdiction purposes.

8. Venue is proper in the Western District of Oklahoma, because the property at issue is located in this district, the loss occurred in this district, and the claims asserted herein arose from one or more acts and/or omissions that occurred in this district.

### III. FACTUAL BACKGROUND

9. Iza entered into an agreement with Fidelity and St. Paul (hereinafter, collectively "Defendants") to pay Defendants' premiums in exchange for insurance coverage protecting IZA's Property.

10. Defendant, Fidelity, issued the Commercial Policy of Insurance, Policy No. BIP-9S197998-22 to Plaintiff, which covers damage to Plaintiff's property located at 1110 NW 10th Street, Oklahoma City, Oklahoma 73106 ("Policy 1").

11. Defendant, St. Paul, issued the Commercial Policy of Insurance, Policy No. BIP-6T511506-22 to Plaintiff, which covers damage to Plaintiff's property located at 5831-5841 NW 10th Street, Oklahoma City, Oklahoma 73127 ("Policy 2") (collectively referred to as the "Polices").

12. Policy No. BIP-9S197998-22 was in effect from November 15, 2022, through November 15, 2023, and Policy No. BIP-6T511506-22 was in effect from July 5, 2022 through July 5, 2023 (referred to as the "Policy Periods").

13. Coverage under the Policies covers direct physical loss of or damage to Covered Property under the Policies as a result of a covered loss.

14. Damage caused by wind and rainstorms are covered losses under the Policies.

15. Through these agreements, Fidelity and St. Paul represented to Plaintiff that they would conduct themselves in accordance with Oklahoma law and would fully and faithfully investigate and pay claims. Plaintiff relied on said representations.

16. During the Policy Periods Plaintiff's Property sustained significant damage from a severe tornado, wind, hail, and rainstorm that swept through Oklahoma County, Oklahoma, which directly hit Plaintiff's Property.

17. The severely strong winds and heavy rain due to the tornado caused the Properties to sustain extensive damage to the exterior of the buildings, walls, elevation structure, roofs, windows, power lines, and air conditioning units.

18. The extremely strong winds from the tornado caused openings in the Property's roofs and walls, which allowed rain water to intrude in the structures, thereby also causing severe interior damage including ceiling damage and water damage.

19. Plaintiff timely and properly submitted a claim to Fidelity for the damage done to its property located at 1110 NW 10th Street, Oklahoma City, Oklahoma 73106.

20. Plaintiff also timely and properly submitted a claim to St. Paul for the damage done to its property located at 5831-5841 NW 10th Street, Oklahoma City, Oklahoma 73127.

21. Fidelity acknowledged the claim by assigning the claim number DHY8761001H ("Claim 1"). Fidelity then assigned Claim 1 to Field Claims Representative, Bhavin Shah ("Shah").

22. St. Paul also acknowledged the claim by assigning the claim number DHY8762001H ("Claim 2") (collectively the "Claims"). St. Paul then assigned Claim 2 to Field Claims Representative, Tyler Campbell ("Campbell").

**A.  Investigations, Reports, and Denial**

23. At some point after reporting the Claims, Defendants' respective adjusters visited the Property.

24. During the inspection, Defendants recorded damage to the roofs, HVAC units, and building exteriors of all three buildings on the property. However, Defendants improperly failed to record the additional obvious and extensive covered damages to the Property.

25. As a result, Defendants' assessment significantly undervalued the covered damages to the Property owed under the Policy, which included damage to roof membranes, wall claddings, and windows (among other damages).

26. Shortly thereafter, Fidelity retained HAAG Engineering ("HAAG").

27. HAAG is routinely retained by insurance companies like Defendants, due to their biasness in favor of insurance carriers over property owners.

28. Defendant Fidelity failed to explain why HAAG was necessary to properly adjust Claim 1 and why its adjuster, who represented herself to be was initially qualified but now suddenly was not able to properly adjust Claim 1.

29. Based on information and belief, Defendant Fidelity retained HAAG simply based on its knowledge that HAAG favors insurance carriers over property owners and that HAAG improperly blames damages generally on excluded causes of loss.

30. HAAG visited the Property on or about April 17, 2023. Despite listing on Claim 1 in its report, HAAG also inspected the adjacent properties connected to Claim 2.

31. On Building 1 at 1110 N. MacArthur Blvd, Defendants' inspection revealed damage to the roof membrane, eave trim metal roofing, ridge cap, fascia, air conditioning units, and bitumen roof.

32. However, they failed to fully account for the severity and extent of this damage, inappropriately attributing much of it to improper installation rather than tornado damage.

33. Interior water damage was observed in Building 2 at 1110 N. MacArthur Blvd. Damage included broken windows, a fallen wall, electrical damage, and ceiling grid and tile damage. Defendants' adjusters did not adequately consider the long-term implications and full extent of this water intrusion resulting from the tornado damage to the roof and exterior.

34. The inspection noted certain conditions of the building's components.

35. However, Defendants improperly used these observations to minimize their liability rather than recognizing them as factors that may have contributed to the damage during the tornado event.

36. Moreover, HAAG made several observations that pointed to the Property being severely damaged and requiring extensive repairs.

37. For example, HAAG reports finding evidence of active interior leaks in a building, but then fails to determine the cause of the interior water damage.

38. Instead, HAAG makes a conclusory decision that, despite the extensive damage to the Property caused by the tornadic winds that hit the Property, the damage was not from a "storm created opening".

39. However, HAAG fails to make any determination what the cause of the damage would be in lieu of the covered storm damage it already admitted to finding to the roof.

40. Defendants simply relied on this baseless conclusion without question, despite the obviously extensive damages to the roof that were recorded.

41. For example, HAAG admits to finding cuts and gashes to the roofs at the Property, and even found a puncture to the roof from wind borne debris "deep enough to have punctures through the modified bitumen layers."

42. HAAG also recorded multiple other cuts and gashes to the roof where commercial HVAC units were displaced by the tornadic wind, and parts tumbles across the roofs of the Property.

43. Despite the extensive evidence of storm created openings found across the roofs, Defendant simply ignored the additional severe damage to the roof system as a whole based on its retained consultant's baseless conclusions.

44. Following the inspections, Defendants both issued nearly identical letters stating that while there was covered damage to the Property the damage allegedly fell slightly below Plaintiff's deductibles.

45. However, during Fidelity and St. Paul's evaluation of the claims, they failed to properly inspect the Property for all covered damages, properly review all material evidence, and as a result substantially undervalued the claim.

46. Moreover, Defendant gave no reasonable explanation how it was able to deny large portions IZA's Claim such as water damage to the roof system based on a lack of storm created opening while simultaneously admitting to wind borne debris, such as the large commercial HVAC Units on the roof, tumbling across the roof and creating cuts, gashed, and punctures across the roof system.

47. Defendants improperly narrowed the scope of their inspections and review of material to wrongfully try and limit their liability on the Claims.

48. Defendants wrongfully focused on provisions excluding coverage and misconstrued facts to fit within the exclusions.

49. Without a reasonable basis Defendants disregarded relevant evidence of covered wind damage that occurred during the Policy Period from the inspections and arbitrarily relied on HAAG's contradictory statements and conclusions without question.

50. Defendants blindly accepted the report and sent a partial denial letter merely stating that there was no covered damage to the roof at the Property.

51. Defendants failed to reasonably evaluate and question HAAG's report that contained unsupported conclusions and did not provide a reasonable basis for denying and undervaluing the majority of the Claims.

52. Moreover, in addition to the skewed and inaccurate report prepared by the HAAG engineer, which Defendants relied on in making their determination in relation to the coverage, cause of the damages, and the repair costs, there is an obvious conflict of interest in relation to Defendants utilizing HAAG as their engineering firm to evaluate the Claims made the subject matter of this lawsuit.

53. HAAG works almost exclusively, if not exclusively, for insurers, just like Defendants. On a financial level, this means that most, if not all, of the yearly revenue HAAG makes comes exclusively from insurers. As such, to call HAAG and its findings and conclusions in its report "impartial" could not further from the truth.

54. As a result, Defendants and its investigators assigned to the Claims failed to perform a proper inspection and as a result prepared a report that failed to include all of the covered damage sustained at the Property. Defendants further grossly undervalued the covered damage observed.

55. Moreover, Defendants and its adjuster performed an outcome-oriented investigation of IZA's Claims, which resulted in a biased, unfair, and inequitable evaluation of IZA's loss for the covered property.

56. To date, Defendants have not paid IZA the value of its Claims under the Policies with Defendants. As a result, IZA has incurred additional damages such as the increased costs of repair that were, and still are to this day, are a natural, probable, and foreseeable consequence of Defendants' failure to pay the amount owed on the Claims. For example, the costs of repair have increased substantially since Defendants' partial denial of the Claims.

57. Defendants' failure to pay IZA the benefits owed under the Policies have also prevented its from repairing and replacing the damaged property pursuant to the Polices.

**B.    Policy Compliance**

58. IZA fully complied with all requirements under the Policies to properly notify the Defendants of all losses to its covered property.

## IV.  CAUSES OF ACTION

### A.  Breach of Contract

59.  Plaintiff reasserts and realleges the allegations set forth in paragraphs 6 through 56 of this Complaint.

60.  Defendants entered into the Policies with IZA.

61.  IZA's Property sustained damage as a result of direct physical loss during the Policy Period caused by hail, wind, and rainstorms, all covered causes of loss.

62.  Defendants have breached the terms of the Policies by wrongfully denying portions of the Claim while underpaying covered damages instead of paying the full benefits owed to IZA under the Polices for a covered loss to the Property.

63.  As a result of Defendant's breach of the Polices, IZA sustained: (1) actual damages, (2) consequential damages (related to increased costs of construction and other related consequential damages), and (3) incurred reasonable and necessary attorney's fees to date.

### B.  Tortious Bad Faith

64.  Plaintiff reasserts and realleges the allegations set forth in paragraphs 6 through 61 of this Complaint.

65.  IZA and Defendants entered into valid and enforceable insurance policies.

66.  Defendants owed IZA the common law duty of good faith and fair dealing.

67.  Defendants breached the common law duty of good faith and fair dealing by wrongfully denying portions of the Claims, underpaying covered damages, and delaying payment on the Claims when Defendants knew or should have known liability was reasonably clear.

68. Specifically, Defendants breached the common law duty of good faith and fair dealing owed to Plaintiff by:

   a. Failing to properly investigate the roof damage;

   b. Failing to properly research weather events at the Property;

   c. Failing to record the obvious evidence of covered damage across the entire roof;

   d. Omitting vital information that tends to prove IZA's Claim in Defendants' partial denial letters, such as the fact that Defendants dis find storm created openings to the roofs at the Property;

   e. Reviewing HAAG's facially contradictory report and failing to ask for additional evidence or explanation to support the unreasonable conclusions;

   f. Ignoring IZA's request for pertinent documents to its insurance Claim discussing damage to the Property;

   g. Omitting any evaluation of the extent of damage to the HVAC unit themselves failing to properly evaluate the reasonable and necessary costs of the covered damages despite evidence of completely detached and removed units;

   h. Forcing Plaintiff to obtain legal counsel to recover insurance benefits it is entitled to under the terms and conditions of the Polices;

   i. Intentionally engaging in an outcome oriented investigation;

   j. Intentionally engaging in a systematic scheme designed to save money otherwise due and owing to the Plaintiff and other similarly situated insureds as a cost-saving mechanism;

   k. Substantially undervaluing the admitted recorded damage by failing to include all necessary material to complete the proper repairs to the Property; and

  l. Hiring investigators in an effort to solely deny IZA's Claim, despite clear evidence of covered damage to the contrary.

69. Defendants additionally breached its duty to deal fairly and act in good faith by making the following misrepresentations:

  a. That there was no damage caused by hail or wind to the roof of the Property;

  b. That the damaged HVAC units could be repaired via a technician despite admitting to missing and damaged panels of the HVAC units across the roofs of the Property;

  c. That interior water damage was not owed for without properly excluding the damage as a covered loss and despite recording cuts, punctures, and "ballooning" of the roof membrane across areas of the roof that would allow water to into the roof system;

  d. Improperly classifying the structural damage to the Property as "less than" substantial structural damage despite recording damaged and crumbling walls, windows; and loose framing and not conducting any tests other visual observation;

  e. That there was no storm created openings to the roof that led to water intrusion; and

  f. That certain interior water damages at the Property were not covered.

70. As a direct and proximate result of Defendants' unfair claims handling conduct, IZA's Claim was unnecessarily delayed, inadequately investigated, and wrongfully denied.

71. Said actions resulted in additional profits and a financial windfall to Defendants as a result of Defendants' actions resulting in additional profits and a financial premium to Defendants and damage to Plaintiff.

72. Defendants benefited from increased financial benefits and ill-gotten gains as a direct result of the intentional and wrongful conduct described above, which resulted in further damage to the Plaintiff.

73. Upon information and belief, Defendants' actions were performed without due regard or care for the claim process and were done intentionally or with gross negligence.

74. Defendants were aware at all times that their actions would result in the denial or underpayment of IZA's Claims, and cause extraordinary harm associated with IZA's Claims.

75. As a result of Defendants' acts and omissions, IZA sustained actual damages.

## V.   CONDITIONS PRECEDENT

76. All conditions precedent to Plaintiff's right to recover have been fully performed or have been waived by Defendants.

## VI.   DEMAND FOR JURY

77. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff herein requests a trial by jury.

## VII.   PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff herein prays that, upon final hearing of the case, it recover actual damages, consequential damages, disgorgement of the increased financial benefits derived by Defendants' wrongful, intentional, willful, and malicious/reckless conduct, and treble/exemplary damages from and against Defendants that may reasonably be established by a preponderance of the evidence, and that Plaintiff

be awarded attorney's fees through trial and appeal, costs of court, pre-judgment interest, post-judgment interest, and such other and further relief, general or special, at law or in equity, to which Plaintiff may show itself to be justly entitled.

                                       Respectfully submitted,

                                       ***/s/Jordan M. Torry***
                                       Jordan Torry
                                       jtorry@dcclawfirm.com
                                       Preston J. Dugas III
                                       pdugas@dcclawfirm.com

                                       **DUGAS & CIRCELLI, PLLC**
                                       1701 River Run, Suite 703
                                       Fort Worth, Texas 76107
                                       Telephone:   (817) 945-3061
                                       Facsimile:    (682) 219-0761

                                       **ATTORNEY FOR PLAINTIFF**